### FRANKLIN B. ROGERS *vs.* EVANGELICAL BAPTIST BENEVO-
### LENT AND MISSIONARY SOCIETY.

Suffolk.    March 8, 9, 1897. — June 15, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Broker's Commission — Trial — Law and Fact.*

If a verdict is ordered for the defendant in an action upon the facts agreed at the trial, the plaintiff's offer of proof, and the evidence, and there is a view of the evidence which, in connection with the facts agreed and offered in proof, would have justified a verdict for the plaintiff, a new trial will be ordered.

CONTRACT, to recover a broker's commission for placing a loan on property owned by the defendant called Tremont Temple, in Boston. Trial in the Superior Court, before *Sherman, J.,* who, at the defendant's request, ruled that the action could not be maintained, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*C. K. Cobb,* for the plaintiff.

*S. Lincoln & J. Lowell, Jr.,* for the defendant.

BARKER, J. A verdict for the defendant was ordered upon the facts agreed at the trial, the plaintiff's offer of proof, and the evidence. We are therefore to accept as true the facts agreed, and those of which proof was offered, and to inquire whether with those facts, upon any fair view of the evidence, the case should have been left to the jury. So far as the evidence was contradictory or inconsistent, the jury might have taken the view of it most favorable to the plaintiff; and if upon such a view he would be entitled to recover, the case should have been left to them.

The defendant is a corporation, and from March 1, 1894, had thirteen directors, six of whom were a finance committee. Joseph Sawyer, Joseph H. Converse, and John Carr were directors and of the finance committee. It was not in dispute that the defendant was seeking a loan; and by minutes from its directors' records, read in evidence, it appeared that on March 13, 1894, Converse and Carr were appointed a committee with full

power to negotiate the loan, and that on March 27 they reported that it had been negotiated with a certain corporation, and the proper officers were directed to execute and deliver the necessary papers. It is agreed that the loan was actually made on July 12, 1894. The treasurer of the corporation which made it testified that the first proposition for it came from the plaintiff's servant, and the plaintiff offered to show that this was on March 12, 1894. It was agreed that the custom is, where a broker is employed to effect a loan, that if he introduces or brings the parties together, and a loan is ultimately effected, he is entitled to a commission.

The plaintiff testified that he was a broker, and that his attention was called to the fact that the defendant was to make a loan about March 2, 1894, by Sawyer, chairman of the finance committee; that he called on Carr on March 13, stated that he came in regard to the loan, and read to him a letter written to the plaintiff by Sawyer on March 5, and suggested to Carr whether he, the plaintiff, could place the loan ; that he told Carr that it had been presented to parties on a basis of three and three quarters per cent, and he thought they would accept it; that Carr said they had been offered the money at four per cent and would be glad to save interest, and then asked who the parties were, and the plaintiff informed him ; that Carr then made a memorandum, and said he would see about it that afternoon, that they were to have a meeting, and that the matter would be brought up, and that he did not want the loan hawked about ; and that he replied that he was doing it quietly, and had presented it only to this one party at that time.

The letter of March 5 from Sawyer, which the plaintiff testified he read to Carr at this interview, stated that, while Sawyer was not authorized to speak for the trustees, he had no doubt, if a proposition came to them before they accepted the one then before them, they would take it at three and one half per cent and pay a commission ; and that it had not been in the hands of any broker.

It might be found from the plaintiff's testimony that this interview was before the meeting of March 13, at which Converse and Carr were made a committee, with full power to negotiate the loan. Carr, however, who was called as a witness by the

plaintiff, and who gave a very different account of the interview from that of the plaintiff, testified that his first interview with the plaintiff was after his own appointment upon the committee.

It is apparent that the jury might find that what occurred at this first interview was as stated in the plaintiff's own testimony, and also that the interview took place at the time stated by Carr, and after he was appointed upon the committee, so that it might be found that in all his interviews with the plaintiff he was acting with authority.   From March 13, for several days, there were daily interviews between the plaintiff and Carr, at each of which the loan was talked about, and from the plaintiff's account of which the jury might find that the plaintiff was rendering services about the negotiation of the loan, upon a mutual understanding that, if it should be made by the corporation mentioned by the plaintiff in his first interview with Carr, the plaintiff would expect a commission.   Carr's account of these interviews was quite different, and he testified, in substance, that at the outset and continuously he distinctly informed the plaintiff that the matter of getting the loan for the defendant was in the hands of another party, to whom it had been intrusted before his own appointment on the committee, and who was to have the commission, and that therefore he could have no conversation with the plaintiff, and that his subsequent talks with the plaintiff were out of the courtesy due to a visitor.   Carr also testified that his first information as to the willingness of the lender to make the loan did not come from the plaintiff, but by telephone from an officer of the lender, before his interview with the plaintiff. But Carr also testified that at his first interview with Converse, either on March 13 or early the next morning, he told Converse that the plaintiff had brought his attention to the fact that he thought he could negotiate a loan with the lender; that he did not remember that Converse made any particular reply; and that he mentioned to Converse from time to time, probably as often as he saw him, that the plaintiff was calling on him every day, and that he and Converse were doing the business together, and that he supposed they were communicating everything of interest in the matter to each other.

If, as the plaintiff testified, he told Carr on March 14 that he

was the first to suggest the loan to the party which finally made it, and that if the defendant took the loan from that company the plaintiff would expect a commission; and if on March 15 Carr told the plaintiff that they had given the other party one day more to secure the loan at four per cent from another corporation, and that, if the other party did not get the money, he should be very glad to have the plaintiff make a commission; and if on March 16 Carr told him that the other party was unable to get the money from the other corporation, and the plaintiff asked why he did not take the loan from the corporation which finally made it, and Carr replied that he wanted more light, and suggested that the plaintiff might find some one who would give him some light upon the tax question connected with the loan; and if on March 17 the plaintiff brought to Carr a person who did give him light upon the tax question, and all these things, which were certainly of interest in the matter of making the loan, were communicated from day to day by Carr to Converse as they met, it would seem that the plaintiff was in fact employed by Carr, and that his employment was recognized by both members of the committee.

Without going further into the evidence, enough has been said to show that, without regard to any question of ratification by the defendant itself, there was a view of the evidence which, in connection with the facts agreed and offered in proof, would have justified a verdict for the plaintiff. Stated concisely, the jury might find that the plaintiff went to Carr, a director, saying, "I am a broker and expect a commission, — I have a party who will give your corporation the loan at $3\frac{3}{4}$ per cent," and that Carr said, "Who are they?" and the plaintiff gave him the name. If Carr was a mere director, the employment, which might be inferred from his question and the plaintiff's answer, could be found to have been ratified by Converse and himself when appointed a committee with full power. If Carr was then upon the committee, there could be found an original employment by him, which could be found to have been ratified, if it needed ratification, by the other member of the committee.

*Exceptions sustained.*